# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 20, 2006      Decided February 13, 2007

No. 05-3179

UNITED STATES OF AMERICA,
APPELLEE

v.

LORENZO PICKETT,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 01cr00181-01)

*A. J. Kramer*, Federal Public Defender, argued the cause and filed the briefs for appellant.

*Valinda Jones*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney at the time the brief was filed, and *Roy W. McLeese, III* and *Rachel Carlson Lieber*, Assistant U.S. Attorneys.

Before: GINSBURG, *Chief Judge*, and RANDOLPH and ROGERS, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* RANDOLPH.

Concurring opinion filed by *Circuit Judge* ROGERS.

RANDOLPH, *Circuit Judge*: Under one of the United States Sentencing Guidelines it takes 100 times more powder cocaine to get a drug trafficker the same sentence he would receive for dealing crack cocaine. The issue in this appeal is whether a judge considering the factors set forth in 18 U.S.C. § 3553(a) may ignore how the 100-to-1 ratio affects those factors in crack cocaine cases.

I.

In 2002, Lorenzo Pickett pled guilty to distributing more than five grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii). Pickett agreed that for sentencing purposes he was accountable for more than fifty grams but less than 150 grams of crack. Using the Guidelines, the district court calculated Pickett's sentencing range as 140 to 175 months, and sentenced him to 158 months. On Pickett's appeal, the government conceded that his criminal history score should have been reduced by three points. Both parties agreed that the correct Guidelines range after this adjustment was 121 to 151 months.

We remanded the case. Before resentencing, the Supreme Court decided *United States v. Booker*. The parties filed new sentencing memoranda. Pickett argued that the district court should impose a sentence below the Guidelines range, taking into account the unwarranted disparity between Guideline sentences based on the weight of crack as opposed to powder cocaine.[1] The district court declined to rule on the issue because

---

[1] Pickett also contended, as he does on appeal, that Congress engaged in unconstitutional discrimination in passing the

it "has been decided by at least one, and maybe more than one of my colleagues on the bench. . . . So therefore, that issue is going up to the Court of Appeals. And I am not prepared to decide it at this time." The court sentenced Pickett to 121 months, the bottom of the Guidelines range.

## II.

### A.

Before the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987, criminal penalties typically were indeterminate – for instance, five years to life, or not more than twenty years. Within the statutory range, federal judges had discretion to impose whatever term of imprisonment they saw fit. Their judgment could be based on the personal characteristics of the defendant, the nature of the crime, the need to deter others, their sentencing philosophy, and so forth. No rule of law required a sentencing judge to give reasons for a sentence, and appellate review was not available. The time a defendant actually served depended only partly on the sentence. With the United States Parole Commission determining release

---

"Disapproval Act," Pub. L. No. 104-38, § 1, 109 Stat. 334 (Oct. 30, 1995), which rejected the Sentencing Commission's proposed amendment to eliminate the crack/powder cocaine disparity. His arguments are similar to those the defendant made in *United States v. Johnson*, 40 F.3d 436 (D.C. Cir. 1994), and we reject them again. Now, as then, "scattered pieces of legislative history are quite inadequate to serve to attribute a discriminatory purpose to the Congress." *Id.* at 440. Just as Congress had race-neutral reasons for adopting a 100-to-1 ratio in the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207, *see Johnson*, 40 F.3d at 441, it had race-neutral reasons for declining to adopt the 1-to-1 ratio the Sentencing Commission proposed.

4

dates, the typical defendant served only fifty-eight percent of the sentence imposed. U.S. SENTENCING COMM'N, FIFTEEN YEARS OF GUIDELINES SENTENCING xviii (Nov. 2004) ("2004 Report").

"The first and foremost goal of the sentencing reform effort was to alleviate the perceived problem of federal criminal sentencing disparity. . . . Evidence that similar offenders convicted of similar offenses received, at times, grossly dissimilar criminal punishment struck a critical nerve among key legislators." Kenneth R. Feinberg, *Federal Criminal Sentencing Reform: Congress and the United States Sentencing Commission*, 28 WAKE FOREST L. REV. 291, 295 (1993). To eliminate these disparities and to accomplish the other objectives of sentencing, the Sentencing Reform Act of 1984 charged the Sentencing Commission with the task of promulgating guidelines federal judges would be required to apply.

In formulating its first set of guidelines, "the Commission decided to base guideline ranges on the existing average time served," as revealed in a study the Commission conducted. 2004 Report at 47. The Commission had begun work on a guideline for drug trafficking offenses when Congress passed the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207, of which 21 U.S.C. § 841 was a part. In § 841, Congress specified mandatory minimum sentences for a wide range of drug trafficking offenses, each triggered by the weight of the "mixture or substance containing a detectable amount" of the particular drug. 21 U.S.C. § 841(b).

The 1986 Act created a problem for the Commission. As is well understood, mandatory minimum sentencing statutes are inconsistent with the objectives of the Guidelines to provide "a substantial degree of individualization in determining the appropriate sentencing range" and to impose "graduated,

proportional increases in sentence severity for additional misconduct or prior convictions." U.S. SENTENCING COMM'N, MANDATORY MINIMUM PENALTIES IN THE FEDERAL CRIMINAL JUSTICE SYSTEM 25 (Aug. 1991). "The application of lengthy penalties to all persons based solely on whether they fit the statute-defined criteria (drug type and amount) results in a problem that is common to all mandatory minimum statutes – unwarranted uniformity." U.S. SENTENCING COMM'N, COCAINE AND FEDERAL SENTENCING POLICY 166-68 (Feb. 1995) ("1995 Report"); *see also* Stephen J. Schulhofer, *Assessing the Federal Sentencing Process: The Problem is Uniformity, Not Disparity*, 29 AM. CRIM. L. REV. 833, 847-48 (1992). Whether in passing the 1986 Act Congress considered these problems, and others, is unknown and unknowable. In the Commission's view, the purpose of the Act was "to establish a two-tiered penalty structure for most drugs," with a five-year mandatory minimum for managers of retail trade and a ten-year minimum for heads of organizations and wholesalers. 2004 Report at 48; 1995 Report at 118.

The drug trafficking guideline the Commission ultimately promulgated did not follow this two-tiered approach. Instead, it extended the § 841 drug "quantity-based approach across 17 different levels [of quantity] falling below, between, and above the two amounts specified" in the statute as triggers for mandatory minimum sentences. 2004 Report at 49. For example, defendants receive a base offense level of thirty-two for dealing at least 1,000 but less than 3,000 grams of heroin, or at least 500 grams but less than 1,500 grams of methamphetamine, or at least 5,000 but less than 15,000 grams of powder cocaine, or – as in Pickett's case – at least fifty but less than 150 grams of crack cocaine. U.S.S.G. § 2D1.1(c)(4) (Drug Quantity Table). Put another way, for purposes of sentencing, 1,000 grams of heroin equals fifty grams of crack cocaine equals 5,000 grams of powder cocaine.

At the time it issued this Guideline the Commission did not explain why it decided to extend the 1986 Act's "quantity-based approach in this way." 2004 Report at 49. But it soon became clear that with respect to cocaine, the Guideline's use of the 100-to-1 ratio between powder and crack cocaine raised significant problems. *See id.* at 50. As a result of the Guideline, "the sentencing guideline range (based solely on drug quantity) is three to over six times longer for crack cocaine offenders than powder cocaine offenders with equivalent drug quantities, depending on the exact quantity of the drug involved." U.S. SENTENCING COMM'N, COCAINE AND FEDERAL SENTENCING POLICY 11 (May 2002) ("2002 Report"). With respect to all drug trafficking offenses, the emphasis on drug quantity distorted the importance of that element as compared with other offense characteristics. 2004 Report at 50. With respect to cocaine, the Commission concluded that although powder cocaine, which is usually snorted, was less addictive than crack cocaine, which is smoked, *see United States v. Brisbane*, 367 F.3d 910, 911 (D.C. Cir. 2004), this difference could not account for the 100-to-1 ratio. All forms of cocaine are addictive. The "current penalty structure – which yields a five-year mandatory minimum sentence for ten to fifty doses of crack cocaine compared to 2,500 to 5,000 doses of powder cocaine – greatly overstates the relative harmfulness of crack cocaine."[2] 2002 Report at 93.

For these and other reasons we will mention later, the Commission issued a report in 1995 criticizing the ratio. Later that year the Commission proposed to Congress an amendment

---

[2] In 1995 the average retail price for five grams of crack, which yielded ten to fifty doses, was in the range of $225 to $750; the average retail price for 500 grams of powder cocaine, which yielded 2,500 to 5,000 doses, was in the range of $32,500-$50,000. 1995 Report at 175.

to the Guidelines eliminating the differential treatment of crack and powder cocaine. *See* 60 Fed. Reg. 25,074 (May 10, 1995). Pursuant to 28 U.S.C. § 994(p), Congress rejected the Commission's proposal and directed it to study the matter further. *See* Pub. L. No. 104-38, 109 Stat. 334 (Oct. 30, 1995). The Commission did so and sent another report to Congress in 1997, this time recommending an amendment to the mandatory minimum statute, 21 U.S.C. § 841: "the current 500-gram trigger for the five-year mandatory minimum sentence [for powder cocaine] should be reduced to a level between 125 and 375 grams, and for crack cocaine, the five-gram trigger should be increased to between 25 and 75 grams." U.S. SENTENCING COMM'N, COCAINE AND FEDERAL SENTENCING POLICY 9 (Apr. 1997). Congress did not amend § 841 in response. In 2002 the Commission issued an even more extensive report setting forth in detail the defects in the current system for sentencing cocaine trafficking offenders and recommending an amendment to § 841 incorporating a 20-to-1 ratio between powder and crack cocaine. 2002 Report at A1-A10. Again Congress did not act on the recommendation. The Commission's 2004 report on fifteen years of sentencing under the Guidelines also advocated altering the 100-to-1 ratio, *see* 2004 Report at 132, but Congress took no action.

## B.

If matters stood as they were in 2004, we would have no choice but to reject Pickett's claim. We held in *United States v. Anderson*, 82 F.3d 436 (D.C. Cir. 1996) – over Judge Wald's dissent – that the problems caused by the 100-to-1 ratio did not justify a sentencing judge in departing from the Guidelines. The Guidelines were then mandatory and the Sentencing Commission's criticism of its own product in its 1995 report to Congress did not render the Guidelines any less so.

In light of *Booker*, *Anderson* is no longer controlling. On the merits, a 5-4 majority in *Booker* held that the Guidelines violated the Sixth Amendment because they required judges to make factual findings that had the effect of lengthening sentences beyond what the jury-found facts would support. 543 U.S. at 244. As a remedy for this constitutional violation, a different 5-4 majority gave sentencing judges even more discretion. Before *Booker*, judges made factual findings and were required to adhere to the Guidelines in determining sentences; after *Booker*, judges continue to make findings but must treat the Guidelines as "effectively advisory." *Id.* at 245; *see Cunningham v. California*, No. 05-6551, 2007 WL 135687 (U.S. Jan. 22, 2007); Michael W. McConnell, *The* Booker *Mess*, 83 DENVER U. L. REV. 665, 677 (2006).

If we looked only to the *Booker* merits opinion, Pickett would have no case. The merits majority held that defendants in his situation have not suffered a Sixth Amendment violation. In his plea agreement, Pickett admitted possessing with intent to distribute more than fifty grams but less than 150 grams of crack cocaine. Under the Guidelines, his base offense level was therefore thirty-two. *See* U.S.S.G. § 2D1.1(c)(4). From this and in light of his criminal history and acceptance of responsibility, the district court calculated his Guideline range and sentenced him at the bottom end of the range. A defendant like Pickett, who admits each fact needed to support his sentence, has not been deprived of his right to a jury trial. *See Booker*, 543 U.S. at 244. As the Court put it in *Blakely v. Washington*, 542 U.S. 296, 310 (2004), if "a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant . . . stipulates to the relevant facts," which is what Pickett did.

Even though Pickett suffered no loss of a constitutional right, *Booker* gave him a remedy. The Court's remedial opinion required the district court to treat the Guidelines as advisory

only and as simply one factor to be considered in sentencing. Our role under *Booker* is to determine whether the sentence the court ordered was "unreasonable." 543 U.S. at 261. We have held that a sentence resting on a legal error is unreasonable, if the error was not harmless.[3] *See United States v. Price*, 409 F.3d 436, 442 (D.C. Cir. 2005). The question in this appeal is therefore whether the district court committed a legal error when it declined to consider the 100-to-1 ratio perpetuated in § 2D1.1 of the Guidelines and the problems it raises in sentencing crack cocaine dealers like Pickett.

Under *Booker*, a sentencing court in any one case will be considering many of the same factors the Sentencing Commission took into account in formulating the Guidelines for all cases. For instance, when the Commission promulgated the Guidelines it had to "meet" the broad sentencing purposes set forth in 18 U.S.C. § 3553(a)(2). *See* 28 U.S.C. §§ 991(b)(1)(A), 994(g). Under *Booker*, district courts must also "take account of" the same purposes, 543 U.S. at 259, which the Court has described as "broad" and "open-ended," *Koon v. United States*, 518 U.S. 81, 108 (1996).[4] One, but only one, of the factors

---

[3] At the end of the *Booker* remedial opinion, the Court stated that "in cases not involving a Sixth Amendment violation, whether resentencing is warranted or whether it will instead be sufficient to review a sentence for reasonableness may depend upon application of the harmless-error doctrine." 543 U.S. at 268.

[4] With the possible exception of § 3553(a)(2)(C) & (D), the broadly stated purposes of sentencing set forth in § 3553(a)(2) are not confined to any particular defendant's situation. The Commission in fact took those § 3553(a)(2) purposes into account in formulating the Guidelines. *See* U.S.S.G. ch. 4, pt. A, intro. cmt.; U.S. SENTENCING COMM'N, PRINCIPLES GOVERNING THE REDRAFTING OF THE PRELIMINARY GUIDELINES (Dec. 1986) ("The Guidelines seek to insure that *all* sentences imposed will fulfill the purposes of

sentencing courts must also consider is the sentencing range under the Guidelines, 18 U.S.C. § 3553(a)(4)(A). After *Booker*, 543 U.S. at 254, a court is "no longer . . . tied to the sentencing range indicated in the Guidelines," *Cunningham*, 2007 WL 135687, at *10. The relevant factors in § 3553(a) are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for–

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such

---

sentencing mandated by Congress."), *reprinted in* Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 HOFSTRA L. REV. 1, 47 (1988). The Commission took the § 3553(a)(2) factors into account because the Sentencing Reform Act required it to do so. *See* 28 U.S.C. §§ 991(b)(1)(A), 994(g). *But see United States v. Castillo*, 460 F.3d 337, 355-56 (2d Cir. 2006).

guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement–

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

While *Booker* and § 3553(a) instruct sentencing courts to consider all these "multiple and vague" factors, *United States v. Johnson*, 471 F.3d 764, 764 (7th Cir. 2006), neither the

Supreme Court nor the statute assigns any weight or ranking to the factors. So how is a court to determine how much influence the factor we are concerned with – the advisory-only Guideline range – should have in sentencing a particular defendant? One might answer that the Guideline range should be considered presumptively reasonable. But that would be to confuse the standard this court and several others have adopted for appellate review[5] with the standard to be applied by the sentencing court. A sentencing judge cannot simply presume that a Guidelines sentence is the correct sentence. To do so would be to take a large step in the direction of returning to the pre-*Booker* regime. *See United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006); *United States v. Brown*, 450 F.3d 76, 81-82 (1st Cir. 2006); *United States v. Cunningham*, 429 F.3d 673, 676 (7th Cir. 2005). Another approach, the correct one in our view, is to evaluate how well the applicable Guideline effectuates the purposes of sentencing enumerated in § 3553(a).

When it comes to the application of Guideline § 2D1.1 in crack cocaine cases, the Commission is one of its severest critics. For more than a dozen years, it has strongly recommended against retaining the 100-to-1 ratio. In its 2002 Report the Commission put the matter bluntly: "the Commission firmly and unanimously believes that the current federal cocaine

---

[5] *See United States v. Dorcely*, 454 F.3d 366, 376 (D.C. Cir. 2006); *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006); *United States v. Green*, 436 F.3d 449, 457 (4th Cir. 2006); *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006); *United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005); *United States v. Lincoln*, 413 F.3d 716, 717 (8th Cir. 2005); *see also United States v. Rita*, 177 F. App'x 357 (4th Cir. 2006), *cert. granted*, 127 S. Ct. 551 (U.S. Nov. 3, 2006) (No. 06-5754); *United States v. Claiborne*, 439 F.3d 479, 481 (8th Cir. 2006), *cert. granted*, 127 S. Ct. 551 (U.S. Nov. 3, 2006) (No. 06-5618).

sentencing policy is unjustified and fails to meet the sentencing objectives" in § 3553(a). 2002 Report at 91. The reasons are several. For one thing, "[c]rack's unique distribution pattern, in combination with the 100-to-1 quantity ratio, can lead to anomalous results in which retail crack dealers get longer sentences than the wholesale drug distributors who supply them the powder cocaine from which their crack is produced." 1995 Report at 174. Although crack is more addictive than powder cocaine, the 100-to-1 ratio "greatly overstates the relative harmfulness of crack cocaine." 2002 Report at 93. Also, the "fact that a significant proportion of federal crack cocaine offenders are responsible for relatively small drug quantities is troublesome because they receive especially disparate penalties in comparison to similar powder cocaine offenders." *Id.* at 98.

The disparities are not only between crack and powder cocaine dealers. In the Commission's opinion § 2D1.1 of the Guidelines is also a failure in distinguishing among crack offenders. The Guideline treats "*all* crack cocaine offenders *as if* they committed [harmful conduct such as violence], even though most crack cocaine offenders in fact had not." *Id.* at vii. In addition to serving "no clear purpose," § 2D1.1's use of the 100-to-1 ratio and its quantity-based approach threatens "public confidence in the federal courts" because it has had a disproportionate impact on African-American offenders, who in 2002 made up eighty-one percent of those sentenced for trafficking crack. 2004 Report at 131, 135. Although the Guidelines were meant to promote uniformity in sentencing, not to increase the length of sentences, § 2D1.1 also "had the effect of increasing prison terms far above what had been typical in past practice . . .." *Id.* at 49.

In terms of the sentencing factors of § 3553(a), the Commission thus believes that its Guideline for crack distributors generates sentences that are "greater than necessary,"

exaggerates "the seriousness of the offense" of crack trafficking, does not "promote respect for the law," and does not "provide just punishment for the offense." 18 U.S.C. § 3553(a), (a)(2)(A). The Commission's self-assessment does not rest on the particulars of any one offender. The sentencing factors just mentioned, as well as § 3553(a)(2)(B), which deals with deterrence in general, and § 3553(a)(6), which deals with "unwarranted sentence disparities," are not entirely confined to the individual characteristics of the particular defendant. *See United States v. Simpson*, 430 F. 3d 1177, 1186 (D.C. Cir. 2005). It therefore seems to us beyond doubt that the district court erred in refusing to evaluate whether sentencing Pickett in accordance with Guideline § 2D1.1, and its 100-to-1 ratio, would effectuate the purposes of sentencing set forth in § 3553(a).

The government has a counter-argument. It is this: § 2D1.1 of the Guidelines is required by 18 U.S.C. § 841(b), the provision setting the mandatory minimum sentences for crack and powder cocaine (and many other illicit drugs). Actually, we put the argument too strongly. The government's position is more subtle than a direct assertion that Congress required the Commission to formulate the Guideline as it did. The government tells us first that allowing district courts to examine or consider or take into account the untoward results of the 100-to-1 ratio in the Guideline would frustrate "the will of Congress." Br. for Appellee 35. Second, whatever the Commission may believe, Congress has not approved the Commission's views. *Id.* at 36-37. Third, the Guideline "reflect[s] a congressional policy choice that trafficking in crack cocaine should be punished more severely than trafficking in powder cocaine." *Id.* at 37. And fourth, judges have no business making "policy choice[s]," which are for the legislature. *Id.* at 39.

We will take up each of these points in the same order. As to frustrating the will of Congress, the Sentencing

Commission does not believe that and neither do we. In the case of a crack dealer who pleads guilty to distributing more than fifty grams of crack, Congress's will is that his sentence should be between ten years' and life imprisonment. 21 U.S.C. § 841(b)(1)(A)(iii). Congress has set statutory minimums and maximums. As to where within that range a particular defendant's sentence should fall, § 841(b) is silent. Over the years, the Commission itself has recognized that it was unclear what Congress intended with respect to sentencing within the ranges set in § 841(b). *See, e.g.*, 2004 Report at 49; 2002 Report at 90. It may be logical to suppose that, given the structure of § 841, the greater the weight of the mixture containing the drug, the greater the sentence should be. But at least with respect to cocaine offenses, that approach entails the adverse consequences mentioned above. Other approaches were possible, such as having the sentence depend on whether the dealer was a retailer or wholesaler.

The government is right that Congress has not approved the Commission's reports on the problems caused by using the 100-to-1 ratio in the Guideline. But we do not understand why this matters. As far as the intent of Congress is concerned, it is the intent of the 1986 Congress, which enacted the mandatory minimums for crack and powder cocaine, that controls. The intent of later Congresses that failed to act on Commission recommendations is of no moment.[6] But it remains of great

---

[6] One cannot treat the Guideline as a manifestation of congressional intent merely because the 1987 Congress did not object to it pursuant to 28 U.S.C. § 994(p). *Cf. INS v. Chadha*, 462 U.S. 919, 975 n.11 (1983); *North Haven Bd. of Educ.*, 456 U.S. 512, 533-34 (1982). Congress did take such action when it rejected the Commission's proposed Guideline amendment in 1995 to reflect a 1-to-1 ratio between crack and powder cocaine. *See* § 1, 109 Stat. at 334. But in doing so Congress directed the Commission to "propose

importance that, in its recommendations, the Commission candidly and forthrightly exposed the weaknesses and failings of its Guideline with respect to crack cocaine sentencing.

True enough, the mandatory minimums reflect a congressional policy choice that crack cocaine offenses should be punished more severely than powder cocaine offenses involving the same weight of drugs. But this entirely evades the question. How much more severely? That point, made in each of the Commission's reports we have cited, is the critical consideration about which Congress has had nothing to say, except what the minimum and maximum punishment will be.

Judges have no business making "policy" choices, so the government tells us. What is the "policy" choice the government has in mind? It cites cases in which courts of appeals have rejected attempts by district judges to adopt and apply a ratio different from the current 100-to-1. *See, e.g.*, *United States v. Spears*, 469 F.3d 1166, 1178 (8th Cir. 2006) (en banc); *United States v. Pope*, 461 F.3d 1331, 1335-37 (11th Cir. 2006); *United States v. Castillo*, 460 F.3d 337, 357-60 (2d Cir. 2006); *United States v. Jointer*, 457 F.3d 682, 686-87 (7th Cir. 2006); *United States v. Eura*, 440 F.3d 625, 633-34 (4th Cir. 2006); *United States v. Pho*, 433 F.3d 53, 62-63 (1st Cir. 2006). But we do not have such a case before us. Instead we have a case in which a district judge refused to consider the problems that arise from applying the Guideline in crack cases. In that respect our case is very close to *United States v. Gunter*, which held that the Guideline with respect to crack cocaine is not mandatory and that a sentencing court "errs when it believes that it has no discretion to consider the crack/powder differential incorporated in the

revision of the drug quantity ratio of crack cocaine to powder cocaine." *Id.* § 2(a)(2), 109 Stat. at 334.

Guidelines – but not demanded by 21 U.S.C. § 841(b) . . ..” 462 F.3d 237, 249 (3d Cir. 2006).

The government also argues that if district judges have discretion to vary from the Guidelines range in crack cases, the result may be "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6). That sentences after *Booker* will not be as uniform as sentences before *Booker* is doubtless true, but this is a consequence of the Supreme Court's decision to treat the Guidelines as advisory rather than mandatory. As we have mentioned, the Commission concluded that disparities existed before *Booker* – disparities between powder and crack traffickers and among crack dealers. The Supreme Court's giving district courts discretion may or may not ameliorate those disparities and may or may not create new ones. Whether these would be "unwarranted" disparities we cannot say at this point. It is enough that under *Booker* and § 3553(a), the district court erred in Pickett's case. His sentence therefore must be vacated and the case remanded for resentencing consistent with this opinion.

*So ordered.*

ROGERS, *Circuit Judge*, concurring: It has taken many years, but the court finally has concluded that it is authorized to hold, and does hold, that a district court, in sentencing a defendant, may properly take into account the fact that the 100-to-1 ratio embedded in the Sentencing Guidelines for crack-to-powdered cocaine offenses bears no meaningful relationship to a defendant's culpability.

As early as 1995, the Sentencing Commission issued a Special Report stating that the ratio was unfair and produced extreme sentencing anomalies, thereby failing to accomplish the purposes set forth in the Sentencing Reform Act, 18 U.S.C. § 3553(a).[1] In 1996, when the Guidelines were mandatory, Judge Wald explained why the 100-to-1 ratio, which the Commission itself had identified as a source of unfairness and unnecessarily high sentences under § 3553(a),[2] established grounds for a departure from the crack/cocaine Guideline. *United States v. Anderson*, 82 F.3d 436, 445-50 (D.C. Cir. 1996) (Wald, J., dissenting). The Sentencing Commission continued to document the unfairness and irrationality of the ratio in its 2002 and 2004 reports, repeating that the crack/cocaine Guideline does not adequately reflect the relative culpability of crack offenders.[3]

---

[1] United States Sentencing Commission, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* (1995).

[2] *Special Report* at xii-xiii, xiv.

[3] United States Sentencing Commission, *Report to Congress: Cocaine and Federal Sentencing Guidelines* at v-ix (2002); United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing*: *An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* at xv-xvi, 113-114, 131-132, 141 (2004).

Absent en banc review, *Anderson* remained binding on panels of this court. *See LaShawn v. Barry*, 87 F.3d 1389 (D.C. Cir. 1996) (en banc). In *Booker v. United States*, 543 U.S. 220, 245 (2005), however, the Supreme Court held that the mandatory Guidelines violated a defendant's rights under the Sixth Amendment and that, as a remedy, the Guidelines scheme could be treated as advisory only. In the wake of *Booker*, the court today holds that under an advisory Guidelines scheme, a district court, in sentencing a defendant, may take into account when considering the sentencing factors of 18 U.S.C. § 3553(a) that the 100-to-1 ratio in § 2D1.1 bears no meaningful relationship to a defendant's culpability. The plain text of § 3553(a) presents no bar to a district court's consideration of the problems with the ratio that applies to all crack offenders, *see* Op. at 9 n.4, and were the court to reach any other conclusion it would frustrate the overarching purpose of a sentencing scheme to impose just punishments reflecting the seriousness of an offense and be contrary to the sentencing factors that Congress established in § 3553(a)(2).[4]

As to Pickett's challenge to the ratio on equal protection grounds, this court has previously rejected it. *See United States v. Holton*, 116 F.3d 1536, 1548 (D.C. Cir. 1997); *United States v. Johnson*, 40 F.3d 436, 440 (D.C. Cir. 1994), *cert. denied*, 514 U.S. 1041 (1996). Absent en banc review, the court is bound by its precedent. *See LaShawn*, 87 F.3d at 1395.

Accordingly, for these reasons, I concur in holding that the district court erred when, in sentencing Pickett, it declined to consider the problems that arise in applying the

---

[4] *See Booker*, 543 U.S. at 264-65; *Fifteen Years* at iv-v.

100-to-1 ratio in Guideline § 2D1.1 to crack cases under the advisory Guidelines scheme, and that his sentence must be vacated and the case remanded to the district court for resentencing.