**Brian DAVIS, Appellant**

v.

**UNITED STATES SENTENCING COMMISSION, Appellee.**

No. 14–5109.

United States Court of Appeals, District of Columbia Circuit.

April 29, 2015.

Mark A. Clifford, Steven Harris Goldblatt, Danielle L. Scoliere, Washington, DC, Stephen Andrew Fogdall, Schnader, Harrison, Segal & Lewis LLP, Philadelphia, PA, for Appellant.

Alan Burch, R. Craig Lawrence, Ronald C. Machen, Jr., Esquire, U.S. Attorney's Office, Washington, DC, for Appellee.

Before: GRIFFITH and KAVANAUGH, Circuit Judges, and RANDOLPH, Senior Circuit Judge.

PER CURIAM

### JUDGMENT

This appeal was considered on the record from the United States District Court

for the District of Columbia and on the briefs and arguments of the parties. The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C.Cir. R. 36(d). For the reasons stated below, it is

**ORDERED and ADJUDGED** that the judgment of the district court be affirmed.

In 1995, the United States Sentencing Commission proposed reducing the then-prevailing 100–to–1 disparity between penalties for crimes involving crack cocaine and powder cocaine to 1–to–1. *See Davis v. U.S. Sentencing Comm'n,* 36 F.Supp.3d 96, 98 (D.D.C.2014). Congress rejected this proposal in the "Disapproval Act." Pub.L. 104–38, 109 Stat. 334 (1995).

Brian A. Davis is serving a thirty-year sentence for crimes related to crack cocaine. In this case, he petitions for a writ of mandamus compelling the Commission to adopt the 1:1 ratio it proposed in 1995. He claims that the Disapproval Act violates his equal protection rights under the Fifth Amendment of the Constitution because Congress allegedly knew that, by upholding a 100–to–1 crack-to-powder cocaine sentencing ratio, it would subject African–American drug offenders to harsher treatment than white drug offenders, which suggests Congress was motivated at least in part because of that disparate effect, and because the Disapproval Act had no rational relationship to the interests it was intended to achieve.

We have repeatedly held that the 100–to–1 sentencing disparity did not violate the equal protection rights of African–Americans. *See United States v. Holton,* 116 F.3d 1536, 1548–49 (D.C.Cir.1997); *United States v. Johnson,* 40 F.3d 436, 439–41 (D.C.Cir.1994). And in *United States v. Pickett,* 475 F.3d 1347, 1348 n. 1 (D.C.Cir.2007), we explicitly rejected the claim that the 1995 Disapproval Act violated equal protection.

*Pickett* "contended . . . that Congress engaged in unconstitutional discrimination in passing the 'Disapproval Act.'" *Id.* We rejected that argument. It is worth quoting our conclusion at length. "[Pickett's] arguments are similar to those the defendant made in *United States v. Johnson,* and we reject them again. Now, as then, 'scattered pieces of legislative history are quite inadequate to serve to attribute a discriminatory purpose to the Congress.' Just as Congress had race-neutral reasons for adopting a 100–to–1 ratio in the Anti–Drug Abuse Act of 1986, it had race-neutral reasons for declining to adopt the 1–to–1 ratio the Sentencing Commission proposed." *Id.* (citations omitted).

▬ Davis advances three arguments for why *Pickett* does not control. First, he claims that "nowhere" in *Pickett* did we "explicitly address the actual controlling question, namely, whether Congress had race-neutral reasons *for maintaining the 100–to–1 ratio.*" But *Pickett* answered this question. We concluded that there were "race-neutral reasons for declining to adopt" the Sentencing Commission's recommendations, which meant that the 100–to–1 ratio would stand. *Id.* Second, Davis argues "*Pickett* is inapplicable because the Court's discussion there occurred in the context of a *direct appeal,* in which the defendant's allegations were not assumed true." But that distinction is of no moment since mandamus—"a drastic remedy reserved for extraordinary situations," *Thomas v. Holder,* 750 F.3d 899, 903 (D.C.Cir.2014) (internal quotation marks omitted)—is proper only if the plaintiff has a clear right to relief, *see id.* No such right exists where, as here, the plaintiff presses a constitutional challenge that we have foreclosed. Third, Davis argues that since the *Pickett* footnote was not "in any

way essential to the Court's holding," it "is no more than *dicta* and lacks any binding force here." But "[a] court's stated and, on its view, necessary basis for deciding does not become dictum because a critic would have decided on another basis." *Kalka v. Hawk,* 215 F.3d 90, 96 (D.C.Cir. 2000) (quoting Henry J. Friendly, *In Praise of* Erie—*And of the New Federal Common Law,* 39 N.Y.U. L.Rev. 383, 385–86 (1964)). If there is any ambiguity about what *Pickett* held, we can look to Judge Rogers' concurrence in the same case, where she wrote, "As to Pickett's challenge to the ratio on equal protection grounds, this court has previously rejected it. Absent en banc review, the court is bound by its precedent." *Pickett,* 475 F.3d at 1357 (Rogers, J., concurring) (citations omitted).

We affirm the judgment of the district court.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R.APP. P. 41(B); D.C.CIR. R. 41(a).