

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-20-2007

# USA v. Ricks

Precedential or Non-Precedential: Precedential

Docket No. 05-4832

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Ricks" (2007). *2007 Decisions.* Paper 650.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/650

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 05-4832, 05-4833

———

UNITED STATES OF AMERICA,

Appellant,

v.

MICHAEL RICKS and MARC RICKS,

Appellees.


———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 00-CR-00024-2, 00-CR-00024-4)
District Judge: Honorable Ronald L. Buckwalter

———

Argued January 23, 2007

Before: SCIRICA, Chief Judge, FUENTES and CHAGARES,
Circuit Judges.

(Filed:  July 20, 2007 )

———

David E. Troyer
Ara B. Gershengorn (ARGUED)
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

*Attorneys for the United States of America*

David L. McColgin (ARGUED)
Defender Association of Philadelphia
Federal Court Division
The Curtis Center, Suite 540 West
601 Walnut Street
Philadelphia, PA 19106
*Attorney for Marc Ricks*

Gavin P. Holihan
546 W. Hamilton Street, Suite 200
Allentown, PA 18101
*Attorney for Michael Ricks*

Mark Osler
Baylor Law School
1114 South University Parks Drive
Waco, Texas 76798
*Attorney for Amici Curiae American Civil Liberties Union
Foundation Drug Law Reform Project, American Civil
Liberties Union of Pennsylvania, Douglas A. Berman,
Michael M. O'Hear, David N. Yellen, and David M. Zlotnick*

---

OPINION OF THE COURT

---

FUENTES, Circuit Judge.

Marc Ricks pleaded guilty to a drug conspiracy charge and was sentenced to 135 months in prison. His brother, Michael Ricks, was sentenced to 168 months in prison after pleading guilty to drug conspiracy, conspiracy to commit murder-for-hire, and conspiracy to affect interstate commerce by robbery. The government appeals these sentences, arguing that they are unreasonable because the District Court improperly used a 20-to-1 crack/powder cocaine drug quantity ratio instead of the 100-to-1 ratio provided for in the Sentencing Guidelines. Because we

conclude that courts may not categorically reject the 100-to-1 ratio, we will vacate both sentences and remand to the District Court for resentencing.[1]

## I.

Brothers Michael and Marc Ricks pleaded guilty to their crimes in January 2001 without plea agreements. They each reserved the issue of the quantity of drugs that should be attributed to them. After an evidentiary hearing, the District Court concluded that each brother was responsible for distributing at least 2000 grams of cocaine base ("crack"), 3000 grams of powder cocaine, and 30 grams of heroin.

Thereafter, the District Court held sentencing hearings for both brothers. The Court determined that Michael's imprisonment range under the Guidelines was 324 to 405 months, and then sentenced him, at the bottom of that range, to 324 months in prison. Subsequently, the Court determined that Marc's imprisonment range was 188 to 235 months, and sentenced him to 200 months in prison. Following appeals by both brothers, this Court affirmed their convictions and sentences. United States v. Michael Ricks, 96 Fed. Appx. 93 (3d Cir. 2004); United States v. Marc Ricks, 96 Fed. Appx. 96 (3d Cir. 2004). While their petitions for certiorari were pending, the Supreme Court rendered the Guidelines advisory in United States v. Booker, 543 U.S. 220 (2005). Accordingly, we remanded both cases to the District Court for resentencing.

On remand, the District Court resentenced Michael Ricks applying a crack/powder cocaine drug quantity ratio of 20-to-1 instead of the Guidelines ratio of 100-to-1. Michael's revised range was 151 to 188 months in prison and the Court sentenced him to 168 months. Two days later, the Court resentenced Marc applying the same 20-to-1 ratio. Marc's new range was 121 to 151 months and the District Court sentenced him to 135 months in prison. Thus, compared to their initial sentences, Michael's time

---

[1] We have jurisdiction to consider the government's appeal under 18 U.S.C. § 3742(b).

in prison was reduced by thirteen years and Marc's by about five and a half years. Viewed another way, Michael and Marc received sentences that were 156 months and 53 months below the bottom of their original Guidelines ranges.

## II.

In determining whether the District Court properly sentenced Michael and Marc Ricks on remand, we first briefly review the relevant history of the 100-to-1 ratio as well as our recent sentencing jurisprudence.

## A.

Amidst growing public concern over the societal impact of cocaine, Congress passed the Anti-Drug Abuse Act of 1986. Pub. L. No. 99-570, 100 Stat. 3207 (1986). Although crack and powder cocaine are pharmacologically the same, the Act requires 100 times more powder cocaine than crack to trigger certain mandatory minimum prison terms. In particular, the Act mandates at least five years in prison for distribution of 500 grams of powder cocaine, but imposes the same penalty for distribution of just 5 grams of crack. 21 U.S.C. § 841(b)(1)(B). Similarly, distribution of 5000 grams of powder cocaine, but just 50 grams of crack, triggers the Act's ten-year mandatory minimum.[2] 21 U.S.C. § 841(b)(1)(A).

The 1986 Act was passed in expedited fashion and, as a result, its legislative history is limited. Indeed, "there were no committee hearings and no Senate or House Reports accompanying

---

[2] Congress also distinguished crack from powder cocaine when it passed the Anti-Drug Abuse Act of 1988. Pub. L. No. 100-690, 102 Stat. 4181 (1988). Under the 1988 Act, simple possession of more than five grams of crack cocaine results in a minimum sentence of five years in prison for a first-time offender. 21 U.S.C. § 844. Simple possession of *any* quantity of powder cocaine by a first-time offender, however, is a misdemeanor punishable by no more than one year in prison. Id.; see also U.S. Sentencing Comm'n Special Report to the Congress: Cocaine and Federal Sentencing Policy 3 (1997).

the bill that ultimately passed." U.S. Sentencing Comm'n Report to the Congress: Cocaine and Federal Sentencing Policy 5 (2002) [hereinafter "2002 Report"]. According to the Sentencing Commission, however, the individual statements of legislators at the time suggest that Congress believed crack was (1) especially addictive, (2) more likely to be connected with other serious crimes, (3) more likely to cause severely damaging physiological effects, (4) more attractive and accessible to young users, and (5) more prone to widespread use because of its "'purity and potency,' the cost per dose, [and] the ease with which it [was] manufactured, transported, disposed of, and administered." U.S. Sentencing Comm'n Special Report to the Congress: Cocaine and Federal Sentencing Policy 118 (1995) [hereinafter "1995 Report"].

In 1987, the Sentencing Commission incorporated the 100-to-1 ratio into the Guidelines' base offense levels and drug quantity table, and thereby established sentencing ranges for the full range of crack and powder cocaine quantities. See U.S.S.G. § 2D1.1(c). As a result, according to the Commission, sentencing ranges for crack offenses are three to six times longer than those for powder cocaine offenses involving equal amounts of drugs.[3] 2002 Report at iv.

Over the years, judges, scholars, practitioners, public interest groups, and civic leaders have criticized the 100-to-1 ratio on a number of grounds. To date, the Sentencing Commission itself has issued four reports highlighting problems with the ratio and advising Congress to change it. In February 1995, at the request of Congress, the Commission studied the ratio and released a report unanimously recommending that the 100-to-1 ratio be reduced. Among other criticisms, the Commission noted that it disproportionately affected African Americans and sometimes forced district courts to punish low-level crack dealers much more

---

[3] In 2006, courts sentenced crack offenders to an average of 122 months in prison and powder cocaine offenders to 85 months. In other words, crack offenders received sentences that were on average 43.5 percent higher than those of powder cocaine offenders. U.S. Sentencing Comm'n Report to the Congress: Cocaine and Federal Sentencing Policy 13 (2007).

severely than high-level powder cocaine suppliers. 1995 Report at xii-xiii. Soon after the issuance of this report, the Commission voted four to three to submit an amendment to Congress that would have equalized penalties based on drug quantities. See 60 Fed. Reg. 25,074 (May 10, 1995); 2002 Report at v. However, Congress passed and the President signed legislation rejecting the amendment and directing the Commission to submit new recommendations that would reflect the view that "the sentence imposed for trafficking in a quantity of crack cocaine should generally exceed the sentence imposed for trafficking in a like quantity of powder cocaine." Pub L. No. 104-38, 109 Stat. 334 (Oct. 30, 1995).

In April 1997, the Commission issued its follow-up report and stated that it was "firmly and unanimously in agreement that the current penalty differential for federal powder and crack cocaine cases should be reduced." U.S. Sentencing Comm'n Special Report to the Congress: Cocaine and Federal Sentencing Policy 2 (1997) [hereinafter "1997 Report"]. More specifically, the Commission recommended that Congress reduce the ratio to 5-to-1 for purposes of the five-year mandatory minimum by increasing the threshold amount of crack and reducing it for powder cocaine.[4] Id. at 9. The Commission believed these changes would more effectively accomplish the goals of federal drug sentencing policy. Congress, however, took no action.

In May 2002, at the request of the Chairman and Ranking Member of the Senate Judiciary Committee, the Commission issued a third report, which "again unanimously and firmly conclude[d]" that Congress should "decrease[] substantially" the 100-to-1 ratio. 2002 Report at viii. The Commission specifically recommended reducing the ratio to 20-to-1 by increasing threshold quantities for crack.[5] It explained that the statutory and Guidelines

---

[4] The Commission also recommended equalizing the penalty for simple possession of crack and powder cocaine. 1997 Report at 10.

[5] Unlike the 1997 Report, the 2002 Report did not recommend decreasing threshold amounts for powder cocaine.

penalties exaggerated the harmfulness of crack, swept too broadly to include low-level offenders, overstated the seriousness of most crack-related crimes, and disproportionately impacted minorities. Id. at v-viii.  Congress again failed to act.

Finally, in May 2007, the Commission issued a fourth report that reiterated the conclusions of the 2002 Report.  Without suggesting any particular ratio, the report "unanimously and strongly urge[d] Congress to act promptly" by increasing threshold quantities for crack.  U.S. Sentencing Comm'n Report to the Congress: Cocaine and Federal Sentencing Policy 8 (2007) [hereinafter "2007 Report"].[6]   In addition, noting that "the problems associated with the 100-to-1 drug quantity ratio . . . are so urgent and compelling," the Commission submitted an amendment to Congress that would adjust crack quantities downward by two levels.[7]  Id. at 9-10.  The amendment, which will take effect in November 2007 if Congress does not act, is "tailored . . . to fit within the existing statutory penalty scheme," and, as a result, provides only a "partial remedy."  Id.  As the report states, "[a]ny comprehensive solution requires appropriate legislative action by Congress."  Id. at 10.

---

2002 Report at viii.

[6] The report also advised against adjusting the ratio by reducing threshold quantities for powder cocaine, stating that "there is no evidence to justify such an increase in . . . penalties for powder cocaine."  2007 Report at 8.  In addition, the report urged Congress to repeal the mandatory minimum sentence for simple possession of crack under 21 U.S.C. § 844.  Id.

[7] Under the amendment, the statutory minimum sentences would fall at the upper limit of their corresponding Guidelines ranges rather than below those ranges.  For example, assuming a Criminal History Category of I and no adjustments, the amendment would change the Guidelines range for distribution of 50 grams of crack (which carries a minimum statutory sentence of 120 months) from 121 to 151 months, to 97 to 121 months.  The amendment would adjust crack quantities above and below the mandatory minimum threshold quantities accordingly.  2007 Report at 9.

7

**B.**

Until 2005, the Guidelines provided mandatory sentencing ranges and thereby required district courts to impose prison terms reflecting the 100-to-1 ratio.[8] The federal sentencing landscape changed, however, when the Supreme Court made the Guidelines advisory in Booker. We have since established a three-step procedure for sentencing defendants:

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force.
>
> (3) Finally, they are required to exercise their discretion by considering the relevant [18 U.S.C.] § 3553(a) factors, in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006) (internal quotation marks, citations, and alterations omitted).[9]

---

[8] Prior to 2005, this Court, like our sister circuits, rejected a number of legal and constitutional challenges to the 100-to-1 ratio. See, e.g., United State v. Frazier, 981 F.2d 92 (3d Cir. 1992) (holding that the 100-to-1 ratio did not violate the Equal Protection Clause or constitute cruel and unusual punishment under the Eighth Amendment).

[9] We had not yet laid out this three-step process at the time the District Court resentenced the Ricks brothers. At oral argument, the parties contested whether the District Court effectively applied the 20-to-1 ratio at what is now step one, the

In accordance with <u>Booker</u>, we now review sentences for "reasonableness." <u>United States v. Cooper</u>, 437 F.3d 324, 327 (3d Cir. 2006). In order for a sentence to be "reasonable," the trial court must give "meaningful consideration to the § 3553(a) factors."[10] <u>Id.</u> at 329. We have previously noted that "[a] sentence

calculation of the Guidelines range, or at step three, the application of the § 3553(a) factors. We need not address this issue. A sentencing court "is required to calculate the crack/powder cocaine difference in determining the Guidelines ranges." <u>Gunter</u>, 462 F.3d at 245. But a sentencing court may not, as explained below, *categorically* establish a new ratio rather than apply the § 3553(a) factors to the circumstances of a particular defendant.

[10] The factors listed at § 3553(a) are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for—
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines
    . . .
(5) any pertinent policy statement—

9

that falls within the guidelines range is more likely to be reasonable than one outside the guidelines range." Id. at 332; see also Rita v. United States, 127 S.Ct. 2456, 2463 (2007) (noting that when "*both* the sentencing judge and the Sentencing Commission . . . reach[] the *same* conclusion as to the proper sentence . . . [t]hat double determination significantly increases the likelihood that the sentence is a reasonable one"). In addition, we have explained that "the more that a sentence varies from the advisory Guidelines range, the more compelling the supporting reasons must be." United States v. Manzella, 475 F.3d 152, 161 (3d Cir. 2007).

## III.

We first considered the impact of Booker on the Guidelines' crack/powder cocaine ratio in Gunter, which was published after the government filed its appeal in this case.[11] There, we held that a district court erred when it concluded that it had no discretion to sentence below a Guidelines range that reflected the 100-to-1 ratio. We stated that "district courts may consider the crack/powder cocaine differential in the Guidelines as a factor, but not a mandate, in the post-Booker sentencing process." Gunter, 462 F.3d at 249.

----

> (A) issued by the Sentencing Commission . . . subject to any amendments made to such policy statement by act of Congress . . .;
> . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute also instructs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." Id.

[11] In response to our request, the parties submitted letters discussing the impact of Gunter on this appeal.

10

Although we were not squarely presented with the question of whether district courts are permitted to establish new ratios, we stressed that our holding did "not suggest (or even hint) that [district courts] categorically reject the 100:1 ratio and substitute [their] own, as this is *verboten*." Id. To the extent this last statement is dictum, we hold today that district courts may not replace the 100-to-1 ratio with a ratio of their own choosing.

### A.

The government argues that district courts are not permitted to categorically reject the 100-to-1 ratio established by Congress and incorporated into the Guidelines. The government also contends that allowing courts to create their own ratios will lead to unwarranted sentencing disparities. The Ricks brothers argue that the District Court imposed appropriately individualized sentences after considering the § 3553(a) factors. In addition, Marc Ricks asserts that district courts may apply any ratio that is "reasonable," including the 20-to-1 ratio endorsed by the Commission's 2002 Report. We turn first to the issue of whether courts may establish their own ratios as a matter of policy, and then to whether the District Court did so in this case.

### 1.

There is little disagreement that the 100-to-1 ratio overrepresents the relative harm of crack as compared to powder cocaine. Nevertheless, it is the role of Congress, and not the courts, to determine what crimes are worse than others. See United States v. Castillo, 460 F.3d 337, 357-58 (2d Cir. 2006) ("We have no authority to substitute our policy preferences for that of the legislative branch."); United States v. Spears, 469 F.3d 1166, 1178 (8th Cir. 2006) (en banc) ("Our court, as an unelected body, cannot impose its sentencing policy views and dismiss the views of the peoples' elected representatives."). Indeed, as the Supreme Court stated many years ago, "defining crimes and fixing penalties are legislative, not judicial, functions." United States v. Evans, 333 U.S. 483, 486 (1948).

As recounted above, Congress created the 100-to-1 ratio when setting mandatory minimum sentences in the Anti-Drug

11

Abuse Act of 1986. The Sentencing Commission responded by incorporating the 100-to-1 ratio into the Guidelines, which were approved by Congress. Despite overwhelming criticism of the ratio, Congress has repeatedly refused to alter or eliminate it.

Marc Ricks, however, argues that by rendering the Guidelines advisory, Booker permits district courts to reject the Guidelines' 100-to-1 ratio, as long as they impose sentences that comply with the mandatory minimum sentences in the 1986 Act.[12] We disagree. Even under the current advisory system, district courts must "meaningfully consider" § 3553(a)(4), i.e., "the applicable category of offense . . . as set forth in the guidelines." The section of Booker that makes the Guidelines advisory explains that "the remaining system, while not the system Congress enacted, nonetheless continue[s] to move sentencing in Congress' preferred direction, *helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary*." Booker, 543 U.S. at 264-65 (emphasis added). The Guidelines remain at the center of this effort to "avoid excessive sentencing disparities," and, as the Booker Court explained, the Sentencing Commission will continue "to promote uniformity in the sentencing process" through the Guidelines. Id. at 263. We have likewise observed that the "'Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country.'" Cooper, 437 F.3d at 331 (quoting United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir. 2005)).

Booker stresses "flexibility" in terms of individualizing sentences, not in terms of rejecting Guidelines provisions wholesale. While the Guidelines are indeed advisory, "[n]othing in Booker specifically authorizes district judges to rewrite different Guidelines with which they generally disagree, which is effectively what district judges do when they calculate a sentence with a 20:1 or 10:1 ratio instead of the 100:1 ratio in the drug sentencing

---

[12] Michael Ricks, on the other hand, concedes that "the ultimate authority to change the ratio is vested with Congress and that body has failed to exercise that authority to date." Michael Ricks Br. at 20.

table." Castillo, 460 F.3d at 355.[13]   We conclude that a district court fails to "meaningfully consider" the Guidelines when it rejects the 100-to-1 ratio as a matter of policy.

In addition, we believe that when a district court categorically rejects the 100-to-1 ratio, it fails to properly consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" under § 3553(a)(6).  Allowing district courts to choose a non-Guidelines ratio as a matter of policy would unquestionably lead to such disparities; some judges would presumably continue using the 100-to-1 ratio while others might

---

[13] *Amici curiae* argue that to avoid redundancy with § 3553(a)(1) ("the nature and circumstances of the offense"), the reference to "the seriousness of the offense" in § 3553(a)(2)(A) must mean that sentencing judges should conduct an independent evaluation of the category of the crime.  Other courts of appeals have disagreed about whether this phrase refers to the individual circumstances of a crime or the type of offense.  Compare Castillo, 460 F.3d at 360 ("[P]rovisions such as § 3553(a)(2)(A) refer to the seriousness of a particular set of factual circumstances, not to the seriousness of the broad category of offenses as a general policy matter.") with United States v. Pickett, 475 F.3d 1347, 1352 n.4 (D.C. Cir. 2007) ("With the possible exception of § 3553(a)(2)(C) & (D), the broadly stated purposes of sentencing set forth in § 3553(a)(2) are not confined to any particular defendant's situation.").  Though *amici curiae*'s reading of the statute is certainly a plausible one, we believe that Booker's focus on judicial flexibility for individually tailored sentences weighs against their interpretation.  Further, while the concepts of "nature and circumstances" and "seriousness" may overlap in the context of individual offenses, we do not believe the terms are necessarily redundant.  For example, § 3553(a)(2) refers to "the need for the sentence imposed . . . to reflect the seriousness of the offense." Unlike § 3553(a)(1), this language suggests the need for a sentence to "reflect" to the public the seriousness of the particular crime committed.  This reading comports with other parts of § 3553(a)(2) that require courts to consider the need for the sentence "to promote respect for the law" and "to afford adequate deterrence."

employ a 20-to-1 or 5-to-1 ratio, or even eliminate the disparity in drug quantities altogether.  See Castillo, 460 F.3d at 358-59.[14]

For these reasons, we hold that district courts may not categorically reject the 100-to-1 ratio.  With this ruling, we join at least seven other courts of appeals.  See United States v. Pho, 433 F.3d 53, 64 (1st Cir. 2006) ("[W]e hold that the district court erred as a matter of law when it constructed a new sentencing range based on the categorical substitution of a 20:1 crack-to-powder ratio for the 100:1 ratio embedded in the sentencing guidelines."); United States v. Castillo, 460 F.3d 337, 358 (2d Cir. 2006) (holding that district courts may not "impose a different ratio as a policy matter");  United States v. Eura, 440 F.3d 625, 634 (4th Cir. 2006) (stating that it "wholeheartedly agree[d]" with the First Circuit that the categorical rejection of the 100-to-1 ratio is impermissible); United States v. Leatch, 482 F.3d 790, 791 (5th Cir. 2007) ("Rejecting the 100:1 ratio because a court disagrees with congressional sentencing policy is not a substitute for applying the essential considerations of § 3553(a)."); United States v. Jointer, 457 F.3d 682, 687 (7th Cir. 2006) ("A district court simply cannot substitute its own ratio for the 100:1 ratio."); United States v. Spears, 469 F.3d 1166, 1176 (8th Cir. 2006) (en banc) ("[N]either Booker nor § 3553(a) authorizes district courts to reject the 100:1 quantity ratio and use a different ratio in sentencing defendants for crack cocaine offenses."); United States v. Williams, 456 F.3d 1353, 1369 (11th Cir. 2006) ("Congress concluded the 100-to-1 ratio is justified, and the courts have no authority to change that.").[15]  To date, not one court of appeals has allowed a district

---

[14] As other courts have explained, the disparity between sentences for crack and powder cocaine is not "unwarranted" because it reflects congressional will.  See, e.g., United States v. Pho, 433 F.3d 53, 64 (1st Cir. 2006); Castillo, 460 F.3d at 357.  We have also stated more broadly that "any sentencing disparity authorized through an act of Congress cannot be considered 'unwarranted' under § 3553(a)(6)."  United States v. Vargas, 477 F.3d 94, 100 (3d Cir. 2007).

[15] The Sixth and Tenth Circuits have also made statements suggesting their agreement on this issue, but have done so in cases

court to replace the 100-to-1 ratio with one of its choosing.[16]

**2.**

Marc Ricks also asserts that the District Court did not reject the 100-to-1 ratio as a matter of policy, but instead applied the 20-to-1 ratio specifically to his case while properly considering § 3553(a). Similarly, Michael Ricks argues that whether the District Court categorically rejected the 100-to-1 ratio or not, it reduced his sentence only after also considering the § 3553(a) factors.

The record makes clear, however, that in sentencing Michael and Marc Ricks, the District Court used a 20-to-1 ratio because it disagreed with the 100-to-1 ratio as a policy matter.

---

addressing the more narrow question of whether a district court errs when it refuses to apply a ratio other than 100-to-1. See United States v. Caver, 470 F.3d 220, 249 (6th Cir. 2006) (stating that for the appellate court "to declare a portion of the Sentencing Guidelines unreasonable under all circumstances" would require "exercising legislative power . . . [that] Booker does not authorize"); United States v. McCullough, 457 F.3d 1150, 1172 (10th Cir. 2006) (citing statements in Pho and Eura prohibiting the categorical rejection of the 100-to-1 ratio and stating that it "agree[d]" with "this authority"). The D.C. Circuit, by contrast, held in a recent case that a district court does err when it "refuse[s] to consider the problems that arise from applying the Guideline in crack cases," but specifically noted that it was not presented with the application of a different ratio. United States v. Pickett, 475 F.3d 1347, 1356 (D.C. Cir. 2007). It does not appear that the Ninth Circuit has yet issued a precedential opinion addressing the effect of Booker on the application of the 100-to-1 ratio.

[16] We note that the Supreme Court has granted certiorari in United States v. Kimbrough, 174 Fed. Appx. 798, 799 (4th Cir. 2006), *cert. granted by* Kimbrough v. United States, 127 S. Ct. 2933 (2007), in which the Fourth Circuit stated that "a sentence that is outside the guidelines range is per se unreasonable when it is based on a disagreement with the sentencing disparity for crack and powder cocaine offenses."

15

Although the Court also discussed various relevant factors under § 3553(a), it applied the 20-to-1 ratio to establish adjusted sentencing ranges and then imposed sentences within those new ranges. Further, the Court did not choose a 20-to-1 ratio because of the particular facts of either brother's case. See, e.g., Consol. App. 119 ("[A]s I've done consistently in the cases that I've had here . . . I looked to the Sentencing Commission's suggestion that a 20 to 1 might be reasonable, [and] that strikes me as fair."). In any event, as explained below, to the extent district courts may consider the crack/cocaine differential, they should not do so by creating a new ratio altogether.

**B.**

Although district courts may not categorically reject the 100-to-1 ratio, they may, as <u>Gunter</u> put it, "consider the crack/powder cocaine differential in the Guidelines as a factor" when sentencing defendants. 462 F.3d at 249. How are trial courts, if they choose to exercise their discretion, to go about "factoring" the differential without creating a new ratio? They should first calculate the correct Guidelines range and rule on any departure motions, according to steps one and two of the procedure we set out in <u>Gunter</u>. Then, considering the individual circumstances of a defendant and the specific crime, district courts should consider the relevant § 3553(a) factors. It is at this stage (step 3) that courts *may* consider the crack/cocaine differential as it applies to the particular case before them. See <u>Pho</u>, 433 F.3d at 65 ("[W]e do not intend . . . to suggest that, in a drug-trafficking case, the nature of the contraband and/or the severity of a projected guideline sentence may not be taken into account on a case-by-case basis.").

While the views of the Sentencing Commission may not be used to justify a new ratio altogether, district courts may consider the analysis in the Commission's reports when applying the § 3553(a) factors to a specific case and defendant. For example, the Commission's reports, as well as other sources, can inform the § 3553(a) analysis of "the nature and circumstances of the offense" or "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense . . . [and] to afford adequate deterrence

16

to criminal conduct."  See Williams, 456 F.3d at 1369 ("It may be that for some of the reasons stated in the Sentencing Commission's reports, the Guidelines range in a given crack case overstates the seriousness of the particular defendant's offense or that individualized mitigating factors counsel against a Guidelines sentence."); Jointer, 457 F.3d at 687 ("[T]he Sentencing Commission's detailed reports on crack and cocaine sentencing may have 'practical utility' to a district court's evaluation of the facts and circumstances of the individual case in light of the § 3553(a) factors.") (footnote omitted).  As one of our colleagues in the Fourth Circuit put it, "[t]he Commission's findings . . . can be considered insofar as they are *refracted through* an individual defendant's case."  Eura, 440 F.3d at 637 (Michael, J., concurring) (quoted in Jointer, 457 F.3d at 687).

In short, a district court may, at step three, view the sentencing disparity as too vast.  However, it must do so as applied to the particular defendant that appears before the court.  In terms of sentencing process, a court must give its reasons for why it views the ratio as too harsh when applied to the defendant.

We appreciate that sometimes it will be difficult for trial judges to conscientiously balance factors such as seriousness, deterrence, and just punishment, while respecting the policy choices of Congress and seeking to avoid unwarranted sentencing disparities.  We imagine this will be particularly challenging in cases involving the 100-to-1 ratio, which has been more roundly and persuasively criticized than perhaps any other aspect of current sentencing law.  Certainly, a rule that courts could reject the 100-to-1 ratio altogether or, conversely, never consider criticisms of the ratio would be simpler for district courts to apply.  Nevertheless, we believe that prohibiting the categorical rejection of the 100-to-1 ratio while permitting case-specific consideration of the differential is consistent with § 3553(a) as well as the reasoning in Booker and Gunter.

## IV.

The District Court understandably wanted to apply a fairer drug quantity ratio than the current Guidelines allow, and it logically looked to the recommendations of the Sentencing

17

Commission for guidance in doing so. Indeed, as a matter of policy, we agree with the District Court that a 100-to-1 ratio leads to unjust sentences, and we encourage Congress to revisit the issue and heed the recommendations of the Commission. Meaningful consideration of the § 3553(a) factors, however, does not permit trial courts to categorically reject a provision of the Guidelines that Congress has endorsed.

We conclude that when a district court imposes a below-Guidelines sentence for a crime involving crack, the record must demonstrate that the court focused on individual, case-specific factors. Because courts may not replace the 100-to-1 ratio with one of their choosing, we will vacate the sentences of Michael and Marc Ricks and remand to the District Court for resentencing in accordance with this opinion.