

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-25-2007

# USA v. Ricks

Precedential or Non-Precedential: Precedential

Docket No. 05-4833

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Ricks" (2007). *2007 Decisions.* Paper 282.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/282

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 05-4833

————————

UNITED STATES OF AMERICA,
                                        Appellant

v.

MARC RICKS,
                                        Appellee

————————

**ORDER SUR PETITION FOR REHEARING EN BANC
SECOND AMENDED**

————————

Present: SCIRICA, <u>Chief Judge</u>, SLOVITER, McKEE, RENDELL, BARRY,
AMBRO, FUENTES, SMITH, FISHER, CHAGARES,
JORDAN and HARDIMAN, <u>Circuit Judges</u>

————————

The Petition for Rehearing filed by the Appellee in the above-entitled matter, having

been submitted to the judges who participated in the decision of this court and to all the other

available circuit judges of the circuit in regular active service, and no judge who concurred

in the decision having asked for rehearing, and a majority of the circuit judges of the circuit

in regular service not having voted for rehearing, the Petition for Rehearing by the panel and

the Court en banc, is hereby DENIED.  Judge Ambro files a separate dissent.


BY THE COURT,

/s/   Julio M. Fuentes
Circuit Judge


AMBRO, *Circuit Judge*, *Statement Sur Denial of the Petition for Rehearing*.


In this case the panel has vacated the sentences of two brothers, Michael and Marc

Ricks, because the District Court, in exercising its discretion to set their sentences,

disagreed with the advisory Sentencing Guidelines regarding the crack/powder cocaine

differential.  Because I believe that recent Supreme Court precedent and our Court's

precedent puts that discretion with the District Court, I would grant rehearing *en banc*.

I.

The Guidelines incorporate the 100:1 ratio between the threshold quantities of

powder cocaine and crack cocaine that trigger certain mandatory minimum punishments

for distribution of these drugs.  *United States v. Ricks*, slip op. at 4.  This policy has many

critics, most prominently the U.S. Sentencing Commission.  *Id.* at 5–8.  But Congress has

yet to alter the mandatory-minimum provisions or the Guidelines based on them to

alleviate the disparity that the panel describes as "unjust."  *Id.* at 18.

In sentencing Michael and Marc Ricks, the District Court categorically rejected the

Guidelines' 100:1 ratio.  The Court instead used a 20:1 ratio in crafting their sentences.

*Id.* at 3–4.  But the panel has vacated the sentences for failing to give " 'meaningful

consideration' " to the Guidelines, *id.* at 9 (quoting *United States v. Cooper*, 437 F.3d

324, 327 (3d Cir. 2006)), contrary to 18 U.S.C. § 3553(a)(4), which makes the Guidelines' sentencing-range calculation a factor in sentencing. Marc Ricks then petitioned our Court for rehearing *en banc*.

While the panel forbids "categorical rejection" of the Guidelines 100:1 policy, *Ricks*, slip. op. at 18, it would allow case-by-case consideration of the policy's merits in light of individualized factors. *Id.* In reaching this result, the panel relies on *United States v. Rita*, ___ U.S. ___ ,127 S.Ct. 2456 (2007), and *United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006).

## II.

*Gunter* outlined a three-step procedure for district courts to follow in sentencing, as described by the panel's opinion in this case. *Ricks*, slip op. at 8; *Gunter*, 462 F.3d at 247. At step one of *Gunter*'s procedure, district courts are to calculate the Guidelines' sentencing range. 462 F.3d at 247. Step two involves addressing motions regarding departures from the Guidelines. *Id.* At step three, district courts are to "exercise their discretion by considering the relevant § 3553(a) factors," with the understanding that this may result in a sentence outside the Guidelines. *Id.* In this case, the panel holds that the District Court exercised an impermissible degree of discretion, even if that discretion was exercised at step three. But the holding of *Gunter* compels the opposite conclusion.

*Gunter* stated in its final paragraph that "we do not suggest (or even hint) that the Court categorically reject the 100:1 ratio and substitute its own, as this is *verboten*." *Id.* at 249. The panel interprets that language as consonant with its holding in this case, *Ricks*, slip op. at 11, regardless whether the District Court's rejection of the 100:1 ratio

occurred at step one or step three of *Gunter's* procedure. *Id.* at 9 n.9. In my view,

however, the parties' dispute over whether the District Court calculated the Guidelines

range first (at step one) before applying a 20:1 ratio (at step three) matters a great deal.

The quote from *Gunter* refers to the Guidelines' continued role at *step one*.

*Gunter* cited with approval the decision of the First Circuit Court of Appeals in *United*

*States v. Pho*, 433 F.3d 53 (1st Cir. 2006), and the Fourth Circuit Court of Appeals in

*United States v. Eura*, 440 F.3d 625 (4th Cir. 2006), both of which had reversed sentences

in which the district court used a 20:1 ratio to determine the sentencing range.[1] But that

rejection of the 100:1 ratio had occurred *in the initial calculation of the Guidelines range*.

Thus, the district courts in those cases never had the benefit of considering a correctly

calculated Guidelines range, a circumstance that will almost always warrant a remand.

In *Gunter*, an identical situation arose, as the District Court at sentencing stated:

> [D]oesn't a sentencing Court have to respect the
> congressional intent with respect to sentencing for crack
> versus powder cocaine, and to take a position that does not
> recognize what Congress clearly intended, wouldn't that be a
> legislative act by a Court as opposed to a judicial act? I don't
> think the provisions that Congress has put up there for a Court
> to decide to consider suggest that the Court can second guess
> Congress' well spelled out intent with respect to sentencing. I
> don't think I can call it sentencing—I don't think I can say
> that there should not be a sentencing disparity.

462 F.3d at 239. In essence, the District Court based its sentence on the reasoning that it

had no power to reject the Guidelines' 100:1 ratio on a categorical basis. We clarified

---

[1] In *Eura*, the sentencing range based on a 20:1 ratio fell entirely below the statutory minimum, so the District Court sentenced at the statutory minimum. 440 F.3d at 631 n.6.

that the District Court was correct that it lacked the power to reject the Guidelines in calculating the sentencing range at step *one*, but was wrong in believing it lacked that power also at step *three* in setting the actual sentence. "[A] sentencing court errs when it believes that it has no discretion to consider the crack/powder cocaine differential . . . as simply advisory at step three." *Id.* at 249.

The intent of *Gunter* was to reinforce district courts' discretion. The Guidelines' sentencing-range calculation is one factor that district courts must consider under § 3553(a), but under *United States v. Booker*, 543 U.S. 220 (2005)*,* the Guidelines' calculation—including the 100:1 ratio—is advisory. I submit, therefore, that *Ricks* misreads *Gunter* and thus fails to follow its holding.

III.

I also believe that *Ricks* runs afoul of recent Supreme Court precedent.

A.

The panel's opinion conflicts with the Supreme Court's remedial opinion in *Booker*, which makes the Guidelines "effectively advisory" and requires district courts to consider all the factors of § 3553(a). *Id.* at 245. In *Ricks*, the District Court considered the Guidelines' sentencing range—which applied a 100:1 ratio—and rejected that range for what it considered to be a more reasonable punishment. I cannot see why "meaningful consideration" cannot lead to carefully considered rejection of an advisory policy.

It is no answer to say that sentencing judges cannot reject the policy decision of Congress. The whole Guidelines manual represents a policy decision of Congress. In

order to remedy a constitutional defect, *Booker* excised the provisions that previously made the Guidelines mandatory. This made advisory Congress's policy decisions as expressed in the Guidelines. Put simply, they do not have to be followed at step three.

It would also be no answer to say that a district court may consider at step three *only* those things particular to the defendant being sentenced when deciding whether to vary from the Guidelines range. This essentially is the familiar "heartland" concept, *see Rita*, 127 S.Ct. at 2461; USSG § 5K2.0(a)(2), wherein a sentencing court can depart at *Gunter*'s step two from the Guidelines' sentencing-range calculation made at step one only if it finds that the Guidelines themselves inadequately account for the circumstances in a particular case. *Gunter*, 462 F.3d at 247. Importantly, the availability of departures was not enough to save the Guidelines from unconstitutionality. *See Booker*, 543 U.S. at 234–35. There is thus no reason to think that a similar standard applied to step-three variances would leave a sentencing scheme that passes constitutional muster either.

B.

In *Rita*, Justice Breyer's majority opinion described *Booker* reasonableness review as "merely ask[ing] whether the trial court abused its discretion." 127 S.Ct. at 2465; *see also id.* at 2471 (Stevens, J., concurring) ("*Booker* restored the abuse-of-discretion standard . . . ."). Justice Breyer described the Guidelines as, "*insofar as practicable*, reflect[ing] a *rough approximation* of sentences that *might* achieve § 3553(a)'s objectives." *Id.* (majority opinion) at 2464–65 (emphases added). In approving the use of an appellate presumption of reasonableness, he wrote that when "*both* the sentencing judge and the Sentencing Commission . . . reach[] the *same* conclusion as to the proper

sentence . . . [,] [t]hat double determination significantly increases the likelihood that the sentence is a reasonable one." *Id.* at 2463 (emphases in original).

In our case, the trial judge did not reach the same conclusion as the Guidelines (instead reaching the same conclusion as the Commission suggested), thus making it less likely that the Guidelines' sentencing range is reasonable. And the Supreme Court specifically acknowledged that it is valid for a district court generally to disagree with the Guidelines. *See id.* at 2468 (noting as valid the argument that "a party contests the Guidelines sentence generally under § 3553(a)—that is[,] argues that the Guidelines reflect an unsound judgment"); *id.* at 2465 (noting that the judge may hear argument that "the Guidelines sentence itself fails properly to reflect the § 3553(a) considerations"); *id.* at 2464 (recognizing the "differences of philosophical view among those who work within the criminal justice community as to how best to apply general sentencing objectives"). As a result, I believe *Ricks* not only runs counter to *Gunter* but also strays from the directives of the Supreme Court in this admittedly volatile area of sentencing.

\* \* \* \* \*

With this context, I therefore ask: If advisory Guidelines can reflect an unsound judgment that "overrepresents the relative harm of crack as compared to powder cocaine", *Ricks*, slip op. at 11, then why can't a sentencing judge "categorically" reject them at step three as unreasonable? Given that advisory Guidelines must result in a large degree of discretion for district courts, how are they to be advisory if it is reversible error to disagree with them at step three in imposing an otherwise reasonable sentence?

I close with this comment. My colleagues on the *Ricks* panel are trying admirably

to work a balance among conflicting interpretations of statements in Supreme Court

sentencing cases. Most courts of appeals support their position. Besides *Gunter*, only the

Court of Appeals for the D.C. Circuit supports my position. *See United States v. Pickett*,

475 F.3d 1347 (D.C.Cir. 2007). The Supreme Court is on the cusp of deciding the very

issue *Ricks* presents–the effect of the crack/powder cocaine differential in sentencing

under a now-advisory scheme.[2] *See Kimbrough v. United States*, 174 Fed. Appx. 798 (4th

---

[2] In its brief in another sentencing case pending before the Supreme Court, argued the same day as *Kimbrough*, the Government writes that "a variance may be justified either by atypical facts, by persuasive policy reasons for concluding that the Guidelines do not appropriately reflect Section 3553(a)'s sentencing factors, or by a combination of facts and policy considerations." Brief for the United States at 35, *Gall v. United States*, No. 06-7949 (U.S. filed Nov. 27, 2006). The Government also concedes that, under the Supreme Court's sentencing decisions, "a court's ability to vary *based solely on policy disagreements with the Guidelines* avoids Sixth Amendment difficulties . . . ." *Id.* at 36 (emphasis added). So the Government does not advocate as strong a restriction on district courts' discretion as the panel has adopted in *Ricks*.

The Government does argue that district courts may not disagree with the 100:1 crack/powder cocaine differential because that ratio comes directly from Congress. *See* Brief for the United States at 29, *Kimbrough v. United States*, No. 06-6330 (U.S. filed Sept. 7, 2006) (arguing that district courts may "sentence based on policy considerations that differ from those reflected in the Guidelines" but may not disregard "*direct* sentencing requirements" from Congress) (emphasis in original). But if district courts must have discretion to sentence based on policy disagreements in order to comply with the Sixth Amendment, then restrictions on that discretion are unconstitutional whether they come from Congress or the Sentencing Commission. *See Booker*, 543 U.S. at 237–39 (stating that "the fact that the Guidelines were promulgated by the Sentencing Commission, rather than Congress, lacks constitutional significance" and applying the constitutional reasoning of *Blakely v. Washington*, 542 U.S. 296 (2004), to the Guidelines).

The bottom line for our Court today, as we await the Supreme Court's decisions in *Gall* and *Kimbrough*, is that even the Government would not go so far as the panel does here in limiting district courts' discretion to disagree with policies contained in the Guidelines.

Cir. 2006) (per curiam), *cert. granted*, ___ U.S. ___ (2007).  While I write separately here to express my view on the step-three discretion that *Gunter* affords—and the necessity of that level of discretion under *Booker* and *Rita*—I would vote to remand without opinion now with instructions to consider *Kimbrough* when it is issued.

For these reasons I respectfully dissent from the denial of the petition for rehearing *en banc*.


DATED:   October 25, 2007

tyw/cc:     Ara B. Gershengorn, Esq.
            David E. Troyer, Esq.
            Mark Osler, Esq.
            David L. McColgin, Esq.