NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1960
_____

UNITED STATES OF AMERICA

v.

DEMETRIUS GREEN
a/k/a
Frederick Henry
a/k/a
Shawn Tresy
a/k/a
Brad Raine
a/k/a
Tyell Yeisner
a/k/a
Nate
a/k/a
Meat
a/k/a
Demetrice Washington
a/k/a
Charles Brinkley
a/k/a
Demetrice Brown
a/k/a
Demetrice Green
a/k/a
Dimitrius Green
a/k/a
Hakeem Kneff

Demetrius Green,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 04-cr-00054)
District Judge:  Honorable John E. Jones, III
_____

Submitted Under Third Circuit LAR 34.1(a)
November 18, 2010

Before: AMBRO, FISHER and GREENBERG, *Circuit Judges*.

(Filed: December 7, 2010)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Demetrius Green pled guilty to conspiracy to distribute fifty or more grams of

cocaine base in violation of 21 U.S.C. § 846, and the District Court sentenced him to 360

months' imprisonment.  Green appeals his sentence, arguing: (1) that the District Court

erred in concluding it was barred from categorically rejecting the Sentencing Guidelines'

crack-powder cocaine differential on policy grounds; (2) that the plea agreement was

invalid; (3) in the alternative, that the government breached the plea agreement; and (4)

that the District Court erred in not departing downward for acceptance of responsibility.

For the reasons stated here, we vacate and remand for resentencing.

I.

We write exclusively for the parties, who are familiar with the factual context and

legal history of the case. Therefore, we will set forth only those facts necessary to our analysis.

In late 2002 or early 2003, Green set up a drug operation in central Pennsylvania. He traveled between Philadelphia and central Pennsylvania at least once a week to bring cocaine base from the city. He stayed at either motels or private residences throughout central Pennsylvania counties. Green sold crack cocaine, cocaine base, and marijuana, and was also involved in making crack cocaine. He employed other people to distribute the cocaine, and paid his co-conspirators in cash and drugs. His clients paid him in the form of either cash, vehicles or firearms. Throughout the duration of Green's activities, investigators estimated that he distributed over 1.5 kilograms of crack cocaine.

On December 16, 2004, Green was charged in a Second Superseding Indictment with a violation of 21 U.S.C. § 846, conspiracy to distribute fifty or more grams of cocaine base. He pled guilty pursuant to a plea agreement on March 2, 2006.

The plea agreement included provisions concerning acceptance of responsibility and drug quantity. Paragraph 11 of the plea agreement provided that the government would move for a three-level reduction in base offense level if Green adequately accepted responsibility. (App. at 55.) Paragraph 13 stated that Green admitted to a quantity between fifty and 150 grams of cocaine base or crack cocaine, but that the government could seek to prove any quantity at the sentencing hearings. (*Id*. at 56.)

At the guilty plea colloquy, Green attempted to clarify that he was specifically

3

pleading guilty to only fifty grams of cocaine base or crack cocaine. The government explained:

> "And it was explained to Mr. Green that this is simply a range within the guideline and that that range was put in there, but we all understand that he is acknowledging responsibility at the very low end of that range in terms of drug weights. That paragraph goes on to note that of course the court is free to receive information regarding other drug weights that Mr. Green may be responsible for, but he is forthrightly here today acknowledging that he's responsible for at least 50 grams."

(*Id.* at 80.) Following this explanation, Green explicitly acknowledged that he understood that the District Court would "determine the exact amount of drugs involved in this case." (*Id*. at 86.)

The Probation Office prepared a Presentence Investigation Report ("PSR"). Green objected to the PSR on four grounds. He objected to: (1) his base offense level calculation of 38; (2) a determination that he was an organizer or leader of an organization involving at least five people; (3) a finding that he carried a firearm during the offense to which he pled guilty; and (4) failure to consider his acceptance of responsibility on the basis of his guilty plea.

Sentencing hearings were conducted on October 18, 2006 and November 6, 2006. At the hearings, the government presented substantial evidence in the form of witness testimony regarding the details of Green's involvement in the drug conspiracy.

At the conclusion of the sentencing hearings, the District Court requested briefs from both parties. On March 27, 2007, the District Court sentenced Green. It overruled

4

all of Green's objections and adopted the PSR in full. The District Court found by a preponderance of the evidence that 11.323 kilograms of crack cocaine were attributable to Green, resulting in a base offense level of 38. The District Court applied a two-level enhancement for possession of a firearm during the offense, and a four-level enhancement for having a role as a leader of criminal activity that involved at least five participants. The District Court found that Green did not adequately accept responsibility and thus declined to apply a reduction on that basis. It also denied Green's motion to depart downward based upon family ties and responsibility. Accordingly, the total offense level was 43 and the criminal history category was III. The Guidelines range was life imprisonment, but the District Court exercised its discretion pursuant to § 3553(a) and sentenced Green to 360 months in custody, to be followed by five years of supervised release. Green timely appealed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We review a sentencing objection that was not raised below for plain error. *United States v. Russell*, 564 F.3d 200, 203 (3d Cir. 2009). We review the validity of a plea agreement de novo. *United States v. Khattak*, 273 F.3d 557, 560 (3d Cir. 2001). We also review de novo whether the government's conduct violated the terms of the plea agreement. *United States v. Nolan-Cooper*, 155 F.3d 221, 236 (3d Cir. 1998). Finally, we review a district court's refusal to

5

award a sentencing level reduction for acceptance of responsibility under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007).

III.

Green raises four issues on appeal. First, he argues that the District Court erred in concluding it was barred from categorically rejecting the Sentencing Guidelines' crack-powder cocaine differential on policy grounds. Second, he contends that the plea agreement was invalid because the government improperly induced the contract. Third, he argues that if the plea agreement were valid, the government breached the contract by: (1) offering evidence supporting a finding of over fifty grams of cocaine, and (2) declining to recommend a reduction in offense level for affirmative acceptance of responsibility. Fourth, he contends that the District Court erred in declining to reduce his offense level for acceptance of responsibility. We will address each contention in turn.

A.

Green argues that the District Court committed clear error by not recognizing its authority to categorically reject the Sentencing Guidelines' crack-powder cocaine differential on policy grounds. In essence, Green argues that two Supreme Court cases decided after his sentencing–*Kimbrough v. United States*, 552 U.S. 85 (2007), and *Spears v. United States*, --- U.S. --- , 129 S.Ct. 840 (2009)–make clear that district courts may categorically reject the Sentencing Guidelines' crack-powder cocaine differential on policy grounds. Insofar as the District Court relied on *United States v. Gunter*, 462 F.3d

6

237 (3d Cir. 2006), for a contrary position, Green's sentence was based on an erroneous legal conclusion and should be vacated and remanded for resentencing. We agree.

Green was sentenced on March 27, 2007. At that time, our existing case law suggested that a district court could not substitute its own crack-powder cocaine ratio for the 100:1 ratio of the Guidelines. *See Gunter*, 462 F.3d at 249 (3d Cir. 2006) ("[W]e do not suggest . . . that the Court categorically reject the 100:1 ratio and substitute its own, as this is *verboten*.").

The District Court explicitly referenced *Gunter* at sentencing and noted:

"With respect to [the fact that you sold in smaller amounts over a period of time] as it relates to the ratio of crack/powder -- crack to powder cocaine, it was not raised by your attorney, but the Court will raise that as we can under the *United States versus Gunter* case, not specifically argued in the submission by the defendant. We may not substitute our own ratio in place of the 100-to-1 ratio, and we have not done that today for the purpose of sentencing. However, I believe it's incumbent upon me, even on the Court's own initiative, to recognize the possible inequities of the ratio. And I do consider that in fashioning a reasonable sentence today, and in varying the sentence down from the life that is stated under the advisory guidelines."

(App. at 526-27.) The District Court, therefore, varied downward under § 3553(a), but explicitly noted that it did not have the authority under *Gunter* to substitute its own ratio when calculating the applicable Guidelines range.

Several months after Green was sentenced, this Court confirmed our dicta in *Gunter* and explicitly held that "district courts may not categorically reject the [crack-powder cocaine] ratio." *United States v. Ricks*, 494 F.3d 394, 401 (3d Cir. 2007).

7

Shortly thereafter, the Supreme Court effectively overruled *Ricks* in two decisions, *Kimbrough* and *Spears*. The Supreme Court expressly held that a district court may categorically reject the Guidelines' crack-powder cocaine differential as a matter of policy. *See Spears*, 129 S.Ct. at 843-44. Moreover, *Spears* held that district courts "also possess the power to apply a different ratio which, in [the district court's] judgment, corrects the disparity." *Id*. at 843. Therefore, in sentencing Green, the District Court relied on a proposition from *Gunter* that is no longer good law.

We recently faced a nearly identical situation in *United States v. Russell*, 564 F.3d 200 (3d Cir. 2009). In that case, the defendant was sentenced prior to the Supreme Court's decisions in *Kimbrough* and *Spears*. The district court explicitly and properly relied on *Ricks* at sentencing, and noted that it could not substitute its own ratio for the 100-to-1 ratio of the Guidelines. In *Russell*, the district court also declined to vary downward, opting instead to remain within the range provided by the Guidelines. We held that, "the District Court's statements regarding *Ricks* constitute[d] error and that error [was] clear in light of *Kimbrough* and *Spears*. Further, we [found] that the clear error affected Russell's substantial rights, particularly given both his efforts to argue that the crack-powder cocaine disparity justified a variant sentence and the District Court's reliance on *Ricks* in rejecting those efforts." *Id*. at 205. We vacated the defendant's sentence and remanded for sentencing, "as we [found] that giving the District Court an opportunity to resentence Russell in light of its clarified authority under *Kimbrough* and

8

*Spears* ensure[d] the fairness, integrity, and public reputation of Russell's sentencing proceedings." *Id.*

We vacate and remand for substantially the same reasons. While *Kimbrough* and *Spears* do not require a district court to substitute its own ratio, they grant a district court the discretion to do so. Although the District Court varied Green's sentence downward after commenting on the potential inequities of the crack-powder cocaine differential, it declined to substitute its own ratio on the basis of our then-existing case law. Accordingly, we remand to provide the District Court with an opportunity to resentence under our current law.

B.

Although we vacate and remand for resentencing in light of the District Court's reliance on *Gunter*, we nonetheless briefly address Green's remaining arguments to provide the District Court with guidance on remand.

Green argues that the plea agreement is invalid because the government improperly induced him to enter into the plea agreement by making certain representations. Therefore, he contends that he did not enter into the plea agreement voluntarily and knowingly. This argument fails.

Prior to accepting Green's plea, the District Court held a hearing to discuss the provisions of the plea agreement with Green, as was required by Fed. R. Crim. P. 11(b). At that time, the District Court verified that Green "signed the plea agreement, that [he]

9

had read and understood the provisions of the agreement, that [he] had conferred with [his] attorney about the agreement, and that [he] was in fact agreeing to plead guilty freely and voluntarily." *United States v. Jackson*, 523 F.3d 234, 243 (3d Cir. 2008). Moreover, Green acknowledged that the plea agreement stated the complete and only agreement between him and the government, and that no one promised or offered him anything else as an inducement to plead guilty. (App. at 81.)

At the plea colloquy, the government explained in open court that Green was pleading guilty to between fifty and 150 grams of drug weight, but that the District Court could still receive information regarding other drug weights for which he may be responsible. (*Id.* at 80.) The District Court advised Green that the Guidelines range for between fifty and 150 grams of drug weight was approximately 120 months, but that the statutory maximum term of imprisonment for the offense was life in prison. (*Id.* at 82-84.) In all respects, the plea colloquy was thorough and proper and confirmed that the government did not improperly induce Green to sign the plea agreement. Thus, we find the plea agreement to be valid and enforceable.

C.

Green next argues that even if the plea agreement were valid, he did not receive the benefit of his bargain because the government breached the contract. Specifically, Green argues that the government unlawfully: (1) offered evidence supporting a finding of over fifty grams of cocaine, and (2) declined to recommend a reduction in offense level

10

for affirmative acceptance of responsibility. This argument fails. "In determining whether the plea agreement has been breached, courts must determine 'whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the plea of guilty.'" *Nolan-Cooper*, 155 F.3d at 236 (quoting *United States v. Badaracco*, 954 F.2d 928, 939 (3d Cir. 1992)).

Our review of the record reveals that the government did not breach the plea agreement. First, under the plain terms of the plea agreement, the government was permitted to "argue and prove to the court at any sentencing proceedings that the quantity of controlled substances for which [Green] is responsible is greater than this amount agreed to by him." (App. at 56.) In the plea colloquy, Green knowingly and voluntarily consented to this term, and understood that the District Court was "free to receive information regarding other drug weights that Mr. Green may be responsible for." (*Id.* at 80.)

Second, under the plain terms of the plea agreement, the government only agreed to move for a reduction based on acceptance of responsibility "if the defendant [] adequately demonstrate[d] this acceptance of responsibility to the government." (*Id.* at 55.) However, a "defendant who enters a guilty plea is not entitled to an adjustment [for acceptance of responsibility] as a right." U.S.S.G. § 3E1.1, cmt. n.3. Instead, a defendant must enter a guilty plea "prior to the commencement of trial [in addition to] truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or

11

not falsely denying any additional relevant conduct for which he is accountable under § 1B1.3." *Id.* The record indicates that Green disputed a substantial amount of relevant conduct, including drug quantity, the possession of firearms, and his role as a leader of the drug conspiracy. Therefore, the government was not required to move for a reduction based on acceptance of responsibility. Thus, we reject Green's contention that the government breached the plea agreement.

D.

Green also argues that the District Court committed clear error in declining to reduce the offense level for acceptance of responsibility. "Neither a plea nor a stipulation, nor any other submission made by the parties, can override the discretion of the sentencing judge, who bears 'the ultimate responsibility for determining whether the defendant is entitled to a sentencing reduction for acceptance of responsibility.'" *United States v. Singh*, 923 F.2d 1039, 1043 (3d Cir. 1991).

The District Court found that Green "disclaimed relevant conduct underlying the offense, and therefore should be denied acceptance of responsibility pursuant to U.S.S.G. 3E1.1." (Supp. App. at 27.) Indeed, Green claimed not to possess firearms, claimed not to be a leader of the drug conspiracy, and claimed not to be involved with a specific quantity of drugs. The record reveals substantial evidence to the contrary. Therefore, we find that the District Court did not abuse its discretion by declining to grant Green a two-level reduction for acceptance of responsibility.

## IV.

For the foregoing reasons, we vacate the judgment of the District Court and remand for a new sentencing hearing consistent with this opinion.